OPINION OF THE COURT
Joseph Slavin, J.
The first proceeding captioned above was instituted by Charlie L. Johnson, to validate his candidacy for member of *718 community school board, district No. 19, and the second proceeding was instituted by a citizen objector to invalidate the nominating petition of the said Charlie L. Johnson.
Both attorneys have stipulated that the report of the clerks of the Board of Elections, as will be referred to below, is to be adopted by the court and no further line-by-line proceeding will take place, either to revalidate signatures or to invalidate other signatures. The matter is submitted on a question of law as to whether or not an objector must be present at all hearings conducted by the Board of Elections.
The objector cites Matter of Dallinger (169 Misc 150, affd 255 App Div 721). That 1938 case holds that an objector must be present at all hearings as a prerequisite to having the Board pass on the merits of the objections. It follows that if the objections are dismissed by the Board for failure to comply with appearance, time and service restrictions (as distinguished from a line-by-line count), the objector has no standing to institute the proceeding under Election Law § 6-116.
From an examination of the papers filed with the Board of Elections in the City of New York and from records as maintained under the supervision of Betty Dolin, Executive Director, the "facts” involving this controversy are as follows:
The candidate, Charlie L. Johnson, duly filed a nominating petition seeking to be a candidate for member of community school board, 19th district. Thereafter, timely objections thereto were filed by one Julius Liblick.
Following the normal procedure, specifications of objections were timely served and filed by the objector. The clerks of the Board of Elections (Brooklyn office) thereafter conducted their line-by-line review of the nominating petition and found that the nominating petition contained 240 signatures, of which 94 were invalid (79 not registered, 9 out of district and 6 subscribing witnesses not registered), leaving a net number of valid signatures of 146, which is less than the required 200 signatures.
Complying with the Board’s procedure, the clerks prepared a report dated March 10, 1986, which was presented to the Commissioners of the Board of Elections at its en banc hearing on March 14, 1986. At that time, the objector did not appear, either in person or by attorney. The candidate was represented by his attorney, Mr. Robert Allan Muir, Jr., who called for the production of proof of service of the specifications of objections. It was at this point that problems arose.
*719 There is no question that the proof of service had been filed with the Board of Elections; however, the clerk of the Board, Mr. Michael Sternlieb, in charge of Brooklyn papers, did not hear this matter being called and, accordingly, did not then present the proof of service. The Board therefore dismissed the objections for "No Proof of Service” and declared the candidacy valid. Evidently, on Monday, March 17th, this failure by the Board’s clerk was called to the attention of the Board, which scheduled a second hearing on March 18, 1986. Again, only Mr. Muir, representing the candidate, was present. On this second hearing, the Board reversed its prior decision and adopted the clerk’s report and invalidated the nominating petition. The basis for this action was that the proof of service had been timely filed and had been in the Board’s possession at all times thereafter.
The Board of Elections has not adopted formal rules of procedure applicable to school board election matters. Its practice is to conduct hearings based on the filed papers, including proofs of service, whether a candidate or an objector is present or not.
If the papers show, on their face, they were timely filed with the Board and the proof of service of the specifications of objections shows they were timely served upon the candidate, the Board does not go beyond those filing dates and does not require the presence of the party, either in person or by representative, attorney or otherwise.
The issue squarely before the court is whether it is bound by the Dallinger (supra) decision. Because of the pressure of business with which the Board is burdened, both the candidate and the objector often do not receive timely notice of the date that the Board will be considering objections to a candidacy. It appears, insofar as candidacies in Brooklyn are concerned, this year the Board had before it 63 clerks’ reports on objections to candidacies. Of these, 14 were heard on March 11th and 49 were heard on March 14th.
A review of those clerks’ reports (excluding the one at issue), shows that in eight instances, neither the objector nor the candidate appeared. The Board adopted the clerks’ reports in each of these matters, validating 3 and invalidating 8 candidacies. (It appears of these 11, the objector in 5 was Julius Liblick, the objector herein.) In five instances, only the objector appeared and the Board validated 4 and invalidated 1. In 10 cases, only the candidate appeared and the Board *720 validated all 10. The court notes that within this last group, objections were filed to three candidates without filing proof of service and the Board validated all three. One of these three involved was an attack upon this candidate by another objector who failed, as set forth above, to file proof of service.
In view of the fact that no objector or candidate was aware of any requirement to be present at Board hearings, pursuant to oral directions, prior practice or written rules, it would be improper to follow the Dallinger (supra) decision. The court notes that it was apparently never followed.* It appears to the court that the Board of Elections determines these matters on the "papers” which, basically, consist of the clerks’ report of either their line-by-line review or review of the specifications of objections. To follow the Dallinger (supra) decision would be to impose, retroactively, a strict rule requiring litigants to appear before this quasi-judicial Board. Such rule has not been in effect in the past and it is not the court’s function to impose rules of procedure upon the Board of Elections. It has sufficient authority to establish its own rules of procedure as to appearance requirements.
Accordingly, the proceeding to validate is denied and the proceeding to invalidate is granted.

 The court finds that Matter of Dallinger (169 Misc 150, affd 255 App Div 721) was cited in only two other cases, Matter of McGovern (Olson) (266 App Div 985 [1943]) and Matter of Lewis v Murray (10 Misc 2d 1009). In each of these cases, the points raised dealt with "objections” per se and not with appearance requirements before a Board of Elections.